## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MANNIE MADDOX,                         )
                                       )
              Plaintiff,               )
                                       )
vs.                                    )        CIVIL NO. 06-700-JPG
                                       )
TIMOTHY LOVE, *et al.*,                )
                                       )
              Defendants.              )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, an inmate in the Danville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*[1]  Plaintiff's *pro se* complaint is divided into two enumerated counts.  After reviewing the complaint, however, the Court finds it appropriate to rearrange Plaintiff's claims  into four counts, as stated below.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:**    Against Defendants Love, Garnett, and Ryker for providing reasonable access to religious materials for members of the Christian faith, but not to adherents of the American Hebrew Israelite faith.

> **COUNT 2:**    Against Defendants Love, Garnett, and Ryker for failing to compensate the outside leader of the American Hebrew Israelite faith in the same manner as

---

[1]Plaintiff submitted his motion to proceed *in forma pauperis* while he was confined at the Lawrence Correctional Center.  In September 2007, Plaintiff notified the Court that he had been transferred to the Danville Correctional Center (Doc. #5).

leaders of other religious groups.

**COUNT 3:**     Against Defendants Love, Garnett, and Ryker for allocating a disproportionately small portion of the available religious budget at Lawrence Correctional Center to the American Hebrew Israelite faith.

**COUNT 4:**     Against Defendants Love, Garnett, and Ryker for not permitting members of the American Hebrew Israelite faith to participate in group worship services even under the auspices of Defendant Love, the prison chaplain.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).   Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

Plaintiff states that he is a member of the religious group called African Hebrew Israelites ("AHI").  Plaintiff contends that on September 4, 2004, Defendants Love and Garnett cancelled group worship services for AHI.  Through the prison grievance process, plaintiff learned that the group worship services for AHI were canceled due to budget cuts.  Specifically,  the response to

2

Plaintiff's grievance stated that the outside religious leaders for AHI were paid for their services and, apparently, funds were no longer available to pay them.  Plaintiff alleges that Defendants Love, Garnett, and Ryker have aggravated the situation by denying AHI inmates the opportunity to congregate together for group worship under the auspices of Defendant Lacks, the prison chaplain.

In addition to his claims concerning the lack of group worship, Plaintiff also contends  (1) that the Defendants discriminate against AHI in favor of Christian sects by "providing reasonable access to religious materials" to members of Christian sects, but not to AHI members; (2) that the Defendants failed to compensate outside religious leaders of AHI in the same manner as other religious groups; and (3) that the Defendants allocate a disproportionately small share of the available religious budget to AHI activities and services.

## DISCUSSION

Prisoners retain a First Amendment right to practice their religion, but a prison regulation that infringes upon an inmate's right to practice his religion will nonetheless survive constitutional challenge if prison administrators can establish that the regulation is a rational means of furthering a legitimate penological interest.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987); *Turner v. Safely*, 482 U.S. 78, 89 (1987); *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir. 2002). Legitimate penological interests include inmate security and the proper allocation of limited prison resources.  *See O'Lone*, 482 U.S. at 348, 352-53; *Turner*, 482 at 90; *Al-Alamin v. Gramley*, 936 F.2d 680, 686 (7th Cir. 1991).  As such, to say that a prisoner may freely exercise his religion under the First Amendment is a bit of a misnomer.  *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988). Prisons, for example, are not constitutionally required to excuse prisoners to attend religious services outside the prison walls or to allow inmates to conduct their own religious services.  *Id*.

3

Prisons may also hire chaplains without running afoul of the Fist Amendment's establishment clause. *Id*. Indeed, a prison must take an active role in supplying at least some religious services or activities in order for prisoners to realize the free (or nearly free) exercise of religion. *Id*. Prisons, however, are not constitutionally required to employ chaplains of each and every faith to which prisoners may subscribe. *Id*. Prisons may not discriminate against minority faiths, except to the extent required by the exigencies of prison administration. *Id*.

RLUIPA expands the protection given to a prisoner to practice his religion by barring a state prison which receives federal funds from implementing general regulations that "substantially burden" a prisoner's "religious exercise." 42 U.S.C. § 2000cc-1(a). A prison regulation that substantially burdens a prisoner's religious exercise will be struck down unless the regulation furthers a compelling state interest, and, even then, the prison must employ the "least restrictive means" of promoting that interest. 42 U.S.C. § 2000cc-1(a); *see Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003).

## COUNT 1

At this early stage, the Court cannot conclude that the alleged failure to provide reasonable access to religious materials for AHI members, when access to religious materials is provided for members of Christian denominations, is entirely without merit. Therefore, Plaintiff may proceed against Defendants Love, Garnett, and Ryker on Count 1 of the complaint.

## COUNT 2

As noted above, prisons must take some affirmative action to ensure that the religious rights of prisoners are not completely nullified. This does not mean, however, that the state must provide each religious group or sect the exact same personnel, facilities, or other resources. *See Cruz v.*

4

*Beto*, 405 U.S. 319, 322 n.2 (1972).  Instead, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedoms guaranteed by the First and Fourteenth Amendment." *Id*.  As such, Plaintiff's allegation that the Defendants do not compensate outside AHI leaders in the same manner as it does the leaders of other religous groups, by itself, does not state a claim upon which relief may be granted.  Therefore, Count 2 of the complaint is without merit and should be dismissed.

## COUNT 3

Like  Count 2, Plaintiff's claim in Count 3 concerns the amount of resources allocated to AHI religious activities in comparison to the resources allocated to the activities of other religious groups.  Again, the Constitution does not require that state resources allocated for religious activities in prisons be equally or proportionally distributed among the various religious groups.  *Id*.  Instead, the question is whether the resources actually allocated provide an inmate a reasonable opportunity to practice his religious beliefs.  *Id*.  Plaintiff's allegation that the Defendants do not divide the budget in equal or proportionate shares, by itself, does not state a claim upon which relief may be granted.  Therefore, Count 3 of the complaint is without merit and should be dismissed.

## COUNT 4

At this time, the Court is unable to conclude that the failure of Defendants to permit group worship service by AHI inmates - even under the auspices of Defendant Love - is entirely without merit.  Therefore, Plaintiff may proceed  against Defendants, Love, Garnett, and Ryker on Count 4 of the complaint.

DISPOSITION

IT IS HEREBY ORDERED that **COUNT 2** and **COUNT 3** are **DISMISSED** from this action with prejudice.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **LOVE, GARNETT,** and **RYKER.**  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **LOVE, GARNETT** and **RYKER**. in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of

service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED: November 9, 2007.**


  **s/ J. Phil Gilbert**
**U. S. District Judge**