IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MANNIE MADDOX, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:06-700-JPG-PMF |
| ) | |
| TIMOTHY LOVE, et al., ) | |
| ) | |
|     Defendants. ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is defendants' motion for summary judgment (Doc. No. 105). Plaintiff Mannie Maddox is proceeding on First and Fourteenth Amendment claims pertaining to his ability to exercise sincerely held religious beliefs during his confinement at Lawrence Correctional Center. The motion is opposed (Doc. No. 106).

Summary judgment will be entered if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of the nonmoving party. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

The material facts are not in dispute. Plaintiff is sincere in his adherence to the beliefs of the African Hebrew Israelite (AHI) religion. Regular attendance at services guided by a qualified religious leader is an important part of Maddox's beliefs. During his confinement at Lawrence, the defendants had an obligation to provide Maddox with a reasonable opportunity to exercise his religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Maddox v. Love*, 655 F.3d 709, 719 (7th Cir 2011). In considering whether the defendants deprived Maddox of his right of free exercise, the Court considers the relevant circumstances and balances Maddox's

right against the legitimate penological goals of the prison. *Turner v. Safley*, 482 U.S. 78 (1987)(listing factors considered in determining whether the reasonableness test has been met). While inmates with differing faith needs may be accommodated in different ways, discrimination between inmates adhering to different faiths must be justified and treatment must be qualitatively comparable. *Maddox*. 655 F.3d at 719-720; *Williams v. Lane*, 851 F.2d 867, 885 (7th Cir. 1988).

Maddox was confined at Lawrence Correctional Center between 2001 and 2009. Initially, he exercised his religious beliefs by attending religious services in the prison's chapel, studying religious topics, reading religious literature, praying, following religious dietary rules, and engaging in fellowship and discussion with others who share the faith. For a period of time, he had opportunities approximately every other week to attend services performed by Mr. Elmore, an outside religious leader. Defendant Love located Mr. Elmore and scheduled services for inmates who were identified as AHI on their identification cards. Love issued call passes to AHI inmates, including Maddox. The call passes allowed Maddox to move from his housing unit to the chapel at the appropriate times. Mr. Elmore provided Maddox with discussion topics, study guides, literature and led services once every two weeks. Mr. Elmore was compensated for those services. At some point, someone decided that Mr. Elmore's contract would not be renewed. Defendant Love was so notified. Elmore stopped visiting the Lawrence facility and AHI services were cancelled. Defendant Love made a couple of phone calls in an effort to replace Mr. Elmore and may have attempted to persuade Elmore to continue as an unpaid volunteer, without success. Love did not schedule, lead or supervise services for members of the AHI religion following Elmore's departure. Other arrangements, such as inmate-led religious services or combined Jewish/AHI services, were not offered. It appears that some non-denominational services were scheduled by Love. There is no indication that Love issued call

passes or otherwise arranged for Maddox to attend those services.  After the departure of Mr. Elmore, inmates adhering to other faiths continued to exercise their beliefs.  Some did so with guidance or assistance from Love or other religious leaders, including Jewish inmates, who were fewer in number than AHI inmates.  Inmates adhering to the Muslim faith were issued call passes and allowed to gather regularly.  They were supervised by Love or by a correctional officer but did not rely on assistance from a religious leader.

### I. First Amendment – Reasonable Opportunity to Purse Faith

The defendants argue that the undisputed facts could not reasonable support a finding that they denied Maddox a reasonable opportunity to pursue his faith, pointing to what they perceive as missed opportunities to participate in non-denominational or other religious programs.  The argument is not particularly persuasive, considering that Maddox was an inmate and did not have freedom of movement.  On the contrary, the evidence shows that inmate movement was tightly controlled at Lawrence.  Maddox relied on Love to schedule religious services, enter data into a computer system, and issue call passes.  The call passes authorized particular inmates to move from their housing units to the chapel, where most religious services were conducted (Doc. No. 92-7, p. 23-25).[1]  Drawing reasonable inferences in favor of Maddox, the evidence could support a finding that the defendants did not extend to Maddox a reasonable opportunity to regularly attend religious services – and important aspect of his AHI faith – following the departure of Mr. Elmore.  In short, the defendants have not shown that they are entitled to judgment in their favor on the free exercise claim.

---

[1] According to Jean Campanella, an acting assistant warden, some religious services were provided in a classroom when the chapel was not available (Doc. No. 92-10, p. 8).

## II.  Fourteenth Amendment – Comparable Treatment

The defendants argue that the undisputed facts could not reasonably support a finding that they failed to treat Maddox in a manner comparable to other inmates of different faiths. Drawing reasonable inferences in Maddox's favor, opportunities to regularly attend religious services were scheduled by Love. Those opportunities were afforded to prisoners of other faiths but not to Maddox after Mr. Elmore's departure. Maddox can show that the services offered were qualitatively different. The defendants have not shown that they are entitled to judgment in their favor on the equal protection claim.

## III.  Qualified Immunity

The defendants suggest that they are entitled to qualified immunity, relying on the arguments addressed above. In considering whether a defendant is entitled to qualified immunity, the Court considers (1) whether the defendant violated plaintiff's constitutional rights and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). On this point, the Court is satisfied that Maddox can present facts that would support a finding that the defendants violated his First and Fourteenth Amendment rights by (1) failing to provide him with a reasonable opportunity to exercise an important aspect of his religious beliefs by attending religious services and by (2) providing disparate religious opportunities to plaintiff as compared to non-AHI-inmates. While the defendants suggest that the law on this topic was clearly established, they do not support that position with citation to authority or discussion of relevant decisions (Doc. No. 92, p. 20). At this time, the qualified immunity defense should be rejected.

## IV. Conclusion

IT IS RECOMMENDED that the motion for summary judgment (Doc. No. 105) be DENIED.

SUBMITTED : <u>September 15, 2014</u> .

<u>s/Philip M. Frazier</u><br>
**PHILIP M. FRAZIER**<br>
**UNITED STATES MAGISTRATE JUDGE**