UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MANNIE MADDOX,<br><br>    Plaintiff,<br><br>    v.<br><br>TIMOTHY LOVE, JASON GARNETT and<br>DERWIN L. RYKER,<br><br>    Defendants. | Case No. 06-cv-700-JPG |

### MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff Mannie Maddox's motion for a new trial (Doc. 157). Defendants Timothy Love, Jason Garnett and Derwin L. Ryker have responded to the motion (Doc. 161).

**I.    Background**

This lawsuit stemmed from a decision to cancel African Hebrew Israelite ("AHI") chapel services at Lawrence Correctional Center ("Lawrence") while Maddox was an inmate there. The reason given for the cancellation was that there were no funds to pay the outsider leader to conduct the services. Additionally, no volunteer leader could be found, defendant Chaplain Timothy Love did not have time to supervise an AHI service himself, and the AHI adherents were unable to provide a service text for pre-approval so a service could be supervised only by a correctional officer.

Maddox filed this lawsuit under 42 U.S.C. § 1983 alleging that, in cancelling the chapel services, the defendants (1) violated his First Amendment right, as applied to the states through the Fourteenth Amendment due process clause, to free exercise of his AHI faith and (2) violated his Fourteenth Amendment equal protection right to the opportunity to practice his AHI faith in a manner comparable to the opportunities afforded fellow prisoners of other faiths. Those claims

were tried to a jury on January 25 and 26, 2016, which rendered a verdict in favor of the defendants on both counts. Judgment was entered on January 27, 2016.

## II. Motion and Response

Maddox filed this timely motion for a new trial on February 5, 2016, in which he raises a number of issues including that defendant Love gave perjured testimony, that the defendants' counsel made improper statement in his closing arguments that prejudiced the jury against Maddox, and that Maddox's counsel was ineffective. Specifically, Maddox makes the following arguments:

- In Maddox's deposition, he stated that he talked to Love twice after the AHI services were cancelled about how important the services were to him, and in one conversation asked Love what Maddox could do about the problem, and Love said neither he nor Maddox could do anything because the services were cancelled due to the budget. In his deposition, Maddox also testified that he told prison staff the AHI adherents could have services in the chapel alone without an outside leader. At trial, the defendants' counsel stated during his closing argument that Maddox never said anything about trying to have the services;

- At trial, Love was asked why the AHI adherents were not allowed to worship with Jewish prisoners (the AHI and Jewish faiths share some historic roots, and attending Jewish services would have satisfied Maddox), and Love answered that he could not do anything because of budget cuts;

- Love testified at trial that he called the AHI leader, Ben Ammi, in Jerusalem in an effort to locate an AHI leader willing to lead services at Lawrence. Maddox claims this was false testimony because Ben Ammi was not in Jerusalem but in southern Israel. Maddox further believes Love's testimony was not credible because it would have been more expensive to call Israel than to provide AHI services at Lawrence;

- The defendants' counsel implied during his closing argument that Maddox just wanted money and did not really want to attend AHI services. He did this by noting that in Maddox's grievance, he did not ask to be transferred to the specific institution that he knew held services appropriate for AHI adherents (Western Illinois Correctional Center at Mt. Sterling) but instead only asked to be transferred to institutions he knew he could not go to because of his medium security level (Stateville MSU, East Moline Correctional Center, Dixon Correctional Center or Danville Correctional Center). Maddox believes that his security level would not have prohibited him from being transferred to the institutions he requested;

- The defendants' counsel suggested to the jury during closing arguments that Maddox was in a gang when counsel repeatedly talked about gang members, passing notes during services and security concerns.  Maddox states that he is not in a gang;

- The defendant's counsel repeatedly asked the jury whether they were going to believe the defendants or Maddox;

- Maddox's counsel failed to properly cross-examine Love about his call to Ben Ammi, failed to object to the defendants' counsel's prejudicial statements, and failed to elicit testimony about misconduct by wardens in the Illinois Department of Corrections.

In response, the defendants argue that none of the foregoing satisfies the standards for a new trial.  They deny they offered perjured testimony, and note that Maddox had an adequate opportunity to challenge their testimony on cross-examination.  They further argue that their counsel's statements and arguments were proper since they were based on the evidence in the case and that any error was harmless because the Court instructed the jury that counsel's questions, objections, statements and arguments were not evidence and that the jury should decide the case based on the evidence.  They further argue that a new trial is not an appropriate remedy for deficient counsel performance in a civil case.  Finally, the defendants argue that the jury's verdict was not against the manifest weight of the evidence.

**III.    Analysis**

Federal Rule of Civil Procedure 59(a)(1)(A) allows the Court to grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." This includes where the verdict is against the manifest weight of the evidence or the trial was unfair to the moving party.  *Venson v. Altamirano*, 749 F.3d 641, 657 (7th Cir. 2014); *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).   A verdict is against the manifest weight of the evidence only if, viewing the evidence in favor of the non-moving party, no rational jury could have rendered the verdict.  *EEOC v. AutoZone, Inc.*, 809 F.3d 916, 919 (7th Cir. 2016).   A new

trial may also be warranted where the verdict is based on perjured testimony. *Antevski v. Volkswagenwerk Aktiengesellschaft*. 4 F.3d 537, 540 (7th Cir. 1993). "A new trial is warranted only if the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Plyler v. Whirlpool Corp.*, 751 F.3d 509, 513 (7th Cir. 2014) (internal quotations omitted).

The Court addresses each of Maddox's complaints in turn.

A.    <u>Defendants' Counsel's Statements Regarding Maddox's Conversations with Love</u>

In reviewing statements in closing arguments, the Court first determines whether the statements were actually improper. *United States v. Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003). Statements in closing arguments may have been improper if they were not supported by the evidence admitted at trial. *United States v. Martinez,* 939 F.2d 412, 415 (7th Cir. 1991). Generally, it is proper for an attorney to urge an inference that is based on the evidence admitted at trial.

> [A] significant part of the lawyer's role during closing arguments is to bolster the strength of his case by calling the jury's attention to certain facts or inferences that might otherwise escape the jury's attention. It is perfectly reasonable for defense counsel to discuss the weaknesses of an opponent's case during closing argument so long as counsel's argument is based on evidence admitted at trial.

*Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 731 (7th Cir. 1999).

If counsel's statements were improper, the Court must decide whether, in the context of the entire trial, the improper statements deprived a party of a fair trial. *Sandoval*, 347 F.3d at 631. In making that second inquiry, the Court should consider the nature and seriousness of the improper statements, whether they were invited by the complaining party, whether prejudice was lessened by instructions to the jury, the complaining party's opportunity to counter any prejudice, and the weight of the evidence against the complaining party. *Id.*

Maddox complains that the defendants' counsel incorrectly stated during his closing argument that Maddox never said anything to Love about trying to hold AHI services. Counsel's actual statements were not improper. Rather than stating what Maddox claims, counsel actually stated that Maddox never asked to attend Jewish services, never asked any outside AHI leader to come to the prison to lead services, and in his grievance did not ask for AHI services to be held at Lawrence or to be able to go to Jewish services. All of these statements were supported by the evidence admitted at trial, including Maddox's own testimony, or were reasonable inferences based on the evidence, and were therefor proper to use in closing argument. Because counsel's statements were not improper, they cannot serve as a basis for a new trial.

To the extent Maddox may also be complaining that Love falsely testified that Maddox never said anything about trying to have the AHI service, Maddox himself testified that he had two conversations with Love regarding cancellation of the services. To the extent their testimonies may have conflicted, there is no suggestion either witness intentionally gave false testimony, and it was the jury's decision which witness to believe. A new trial is not warranted because the jury chose too believe one over the other.

  B. <u>Love's Testimony Regarding Attending Jewish Services</u>

Maddox complains that Love was evasive when he was asked why AHI adherents were not allowed to worship with Jewish inmates, testifying only that he could not do anything because of budget cuts. There was no such testimony at trial. A new trial is not warranted on this basis.

  C. <u>Love's Testimony Regarding Calling AHI Leader Ben Ammi</u>

Maddox complains that Love gave false and incredible testimony when he said he called AHI leader Ben Ammi in Jerusalem in an effort to locate an AHI leader to lead services at Lawrence. There was no such testimony at trial. Love testified he wrote a letter to Ben Ammi in

Israel but received no response. A new trial is not warranted on this basis.

    D.    <u>Defendants' Counsel's Statements Regarding Maddox's Motive for Lawsuit</u>

Maddox complains because the defendants' counsel implied during his closing argument that Maddox filed this lawsuit only for money and a transfer to a lower security institution and did not really want religious services at Lawrence.

There was nothing improper about the defense argument in this case. It was based on evidence admitted at trial – Maddox's grievance that did not expressly ask that AHI services be reinstated or that he be allowed to attend Jewish services and instead asked only for transfer to a minimum security institution and money. The defendants' counsel's plea simply asked the jury to make a reasonable inference from that evidence – that Maddox's ideas of how to accommodate his religious beliefs were not workable and that his concern for services was not genuine. It was not the *only* reasonable inference that could be drawn from the evidence, but it was *a* reasonable inference, and the defendants' counsel did not err in asking the jury to reach that conclusion. Other evidence included Maddox's own testimony that the services were important to his life, that he filed the grievance because the AHI services were cancelled, and that he requested a transfer because he thought it would allow him to attend services again. The jury was free to believe Maddox or to accept the defendants' counsel's suggestion otherwise.

Even if the statements had been improper in some way, they did not deprive Maddox of a fair trial when the trial is viewed as a whole. Counsel's statements were brief, and the Court instructed the jury that it should decide the case based on the jury instructions as applied to the admitted evidence, which did not include counsel's statements. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999) (noting that jury instruction that counsel's statements were not evidence to be considered in deliberations mitigated prejudice from potentially improper counsel

arguments).

A new trial is not warranted on this basis.

E.  Defendants' Counsel's Suggestion of Gang Affiliation

Maddox complains that the defendants' counsel suggested at trial that Maddox was in a gang and therefore should not be allowed to participate in unsupervised religious.   It is true that the defendants' counsel asked witnesses about and discussed in his closing argument the security concerns presented by congregate worship in prisons, including the danger that gang members may use the services for nefarious gang-related purposes when they would otherwise be separated within the prison walls.   However, counsel never suggested this concern was specific to Maddox or to AHI adherents generally.   His questions and discussion generally addressed the issue of prison security needs and were relevant to the justification for the prison's rules regarding congregate worship.   A new trial is not warranted on this basis.

F.  Defendants' Counsel's Asking the Jury Who They Would Believe

Maddox complains because the defendants' counsel repeatedly asked the jury in his closing argument whether they were going to believe the defendants or Maddox.   In fact, the defendants' counsel never asked this question.   A new trial is not warranted on this basis.

G.  Maddox's Counsel's Performance

Maddox complains about his own counsel's performance.   As a preliminary matter, a civil litigant does not have a constitutional right to effective assistance of counsel, and a new trial is not the appropriate remedy for deficient civil counsel.  *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001).   More importantly, Maddox's counsel was not deficient.   Maddox's criticism that his counsel failed to properly cross-examine Love about his telephone call to Ben Ammi has no merit since Love never testified he made such a telephone call.   Maddox's counsel was not deficient for

7

failing to object to the defendants' counsel's statements in his closing argument because the statements were either proper or were harmless.  Finally, Maddox complains that his counsel failed to elicit testimony about misconduct by wardens in the Illinois Department of Corrections, but he never states what that testimony would have been, how his counsel could have elicited it, or how it would have been relevant to this case.  In sum, the Court finds Maddox's counsel performed well and enabled Maddox to have a fair trial.

## IV.     Conclusion

For the foregoing reasons, the Court finds Maddox has not shown the trial was unfair to him due to the defendants' counsel's alleged misconduct, his own counsel's alleged deficiencies or the alleged perjured statements from witnesses, either separately or in combination.  Additionally, the Court notes the verdict was not against the manifest weight of the evidence when viewed in favor of the defendants.  Accordingly, the Court **DENIES** Maddox's motion for a new trial under Rule 59(a) (Doc. 157).  The Court reminds Maddox that he has 30 days from the entry of this order to file a notice of appeal if he wishes to appeal the judgment in this case or this order.  *See* Fed. R. App. P. 4(a)(1) & (4)

**IT IS SO ORDERED.**
**DATED:   April 7, 2016**

                                          s/ J. Phil Gilbert
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**